**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ALEX RESTREPO,  :

  :  **OPINION AND ORDER**

        **Petitioner,**  :

  :  **05 Civ. 2680 (SAS)**

- against -  :

  :  **99 Cr. 1113 (SAS)**

UNITED STATES OF AMERICA  :

  :

        **Respondent.**  :

-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/22/08_

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Alex Restrepo moves to vacate, set aside, or correct his sentence

pursuant to section 2255 of title 28 of the United States Code ("section 2255").

Restrepo, a Colombian citizen, challenges his sentence on the ground that he was

denied his due process right to a fair trial when the Government failed to turn over

discovery relevant to his extradition. Restrepo also claims that he was denied his

right to counsel when: (1) defense counsel failed to adequately investigate his

extradition; (2) defense counsel failed to move to suppress statements he made to

United States officials in Bogotá on the ground that Colombian counsel was not

present; (3) defense counsel was absent from a pre-trial conference; (4) defense

counsel failed to argue to the jury that there was no physical evidence that

Restrepo had been present at the Pagani murder; and (5) defense counsel failed to

move for an acquittal based on the theory of dual incrimination.[1] For the reasons set forth below, Restrepo's motion is denied.

## I.    BACKGROUND

### A.    The Offense Conduct

Restrepo participated in a racketeering organization that engaged in robbery, murder, and narcotics trafficking in New York, New Jersey, and elsewhere. The organization, whose members included Restrepo and numerous other individuals, had a *modus operandi* for many of its robberies.[2] After targeting a potential victim, members of the organization used several cars, communicating by radio, and followed the victim in his or her car. After members of the crew forcibly stopped the victim's car, some of the robbers exited their cars with masks covering their faces and guns drawn. They forcibly took jewelry, money, and other property from the victim, firing shots if they encountered resistance, and

---

[1]    *See* Memorandum of Law in Support of Defendant's Motion Under 28 U.S.C. Sec. 2255 ("Pet. Mem.") at i-ii. Restrepo also claims he was denied effective assistance of counsel when his trial attorney did not admit that he provided ineffective assistance. *See id.* at 65. Because Restrepo has failed to demonstrate that his counsel was providing ineffective assistance, this argument is without merit.

[2]    *See* Government's Memorandum of Law in Opposition to Petitioner's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("Gov't Mem.") at 4.

then fled. Specifically, following a jury trial, Restrepo was convicted of the following: robbery at gunpoint of jewelers at the Hilton Hotel; robbery at gunpoint of a Bravo Supermarket employee; robbery at gunpoint of people at an apartment in Jackson Heights; robbery of drug dealers and a subsequent sale of narcotics; robbery at gunpoint of employees of the American Sirloin Meat & Poultry Company ("ASMPC"); and felony murder of Donald Pagani, a retired New York City Police Detective.[3] Following the murder of Pagani, which occurred during the ASMPC robbery, Restrepo fled to Colombia.

## B. Procedural History

On September 3, 1999, the Government filed a complaint against Restrepo and several others. Restrepo was indicted on October 26, 1999. On November 26, 1999, the United States, through a diplomatic note to Colombia, requested the provisional arrest and detention of Restrepo for the purpose of extradition.[4] Colombia's Attorney General authorized the arrest on November 30, 1999, and Restrepo was arrested the following day by the Colombian authorities. Superseding Indictment S1 99 CR. 1113 (SAS) was filed on December 28, 1999,

---

[3]     *See* Presentence Investigation Report ("PSR") at 32.

[4]     *See* 11/26/99 Diplomatic Note No. 1263, Ex. 2 to Reply Memorandum of Law in Support of Defendant's Motion Under 28 U.S.C. Sec. 2255 ("Pet. Reply Mem.").

-3-

containing fourteen counts. That same day, the United States formally requested Restrepo's extradition.[5]

On August 29, 2000, the Colombian Supreme Court of Justice approved the extradition of Restrepo from Colombia to the United States on Counts One, Two, Twelve, and Thirteen of the Superseding Indictment. Count One charged Restrepo with conducting the affairs of an enterprise through a pattern of racketeering activity, including narcotics distribution, armed robbery, attempted murder, and murder, in violation of section 1962(c) of title 18 of the United States Code. Count Two charged Restrepo with conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity in violation of section 1962(d) of title 18 of the United States Code. Count Twelve charged Restrepo with murder in violation of section 1959(a)(1) and (2) of title 18 of the United States Code. Finally, Count Thirteen charged Restrepo with felony murder in violation of section 1959(a)(1) and (2) of title 18 of the United States Code.[6]

Following the ruling by the Supreme Court of Justice, the Colombian Ministry of Justice and Law issued Resolution No. 44, granting the extradition of

---

5    *See* 1/28/00 Diplomatic Note No. 067.

6    *See* Superseding Indictment.

-4-

Restrepo for Counts One, Two, Twelve, and Thirteen.[7] However, Resolution No.

44 also provided that Restrepo would not be extradited unless the United States

guaranteed that, in the event the death penalty was imposed, it would be

commuted.[8] The United States responded in Diplomatic Note 1060, assuring "the

Government of Colombia that the death penalty will not be sought or imposed in

this case."[9] On October 11, the Colombian government also requested an

assurance that Restrepo would "not be subjected to a sentence of life

imprisonment."[10] The United States responded to this request in Diplomatic Note

No. 1206, assuring Colombia that

> should Mr. Restrepo be convicted of the offenses for which
> extradition has been granted, the United States executive authority,
> with the agreement of the attorney for the accused, will not seek
> a penalty of life imprisonment at the sentencing proceedings in
> this case. The Government of the United States also assures the
> Government of Colombia that, should the competent United States
> judicial authority nevertheless impose a sentence of life
> imprisonment against Mr. Restrepo, the United States executive
> authority will take appropriate action to formally request that the

---

[7] *See* 9/13/00 Republic of Colombia Ministry of Justice and Law
Resolution No. 44, Ex. 2 to Pet. Mem. Restrepo appealed the decision, but
Resolution No. 44 was upheld by 9/30/00 Resolution No. 59.

[8] *See* Resolution Number 44, art. 3.

[9] 9/25/00 Diplomatic Note No. 1060, Ex. 4 to Pet. Reply Mem.

[10] 10/11/00 The Republic of Colombia Ministry of Foreign Affairs
Diplomatic Note OJ.E. 29006, Ex. 2 to Pet. Mem.

court commute such sentence to a term of years.[11]

Restrepo was transferred to the United States on October 27, 2000.

The trial against Restrepo commenced on February 19, 2002 and
ended on March 25, 2002. He was convicted on all four counts for which he was
extradited and tried. The Government proved Restrepo's guilt through
voluminous evidence, including the testimony of more than seventy-five witnesses
and more than four hundred items of physical evidence.[12]

At the sentencing proceedings, the Government, in accordance with
Diplomatic Note 1206, requested that Restrepo be sentenced to a term of years and
not a term of life.[13] I denied the Government's request and sentenced Restrepo to
a term of life imprisonment.[14] I noted that Diplomatic Note 1206 constituted a
contract between the United States executive branch and Colombia, and that it did
not bind the judicial branch.[15] Pursuant to the agreement with Colombia, the

---

[11]   10/23/00 Diplomatic Note No. 1206.

[12]   *See* Gov't Mem. at 4.

[13]   *See* Transcript of Sentencing ("Sent. Tr.") at 11.

[14]   *See id.* at 36-37.

[15]   *See id.* at 12.

-6-

Government then requested that I commute the sentence, which I declined to do.[16]

Restrepo appealed the judgment and sentence. Gregory G. Smith, who represented Restrepo during the trial, continued to represent Restrepo on appeal. Restrepo raised two arguments. *First*, he claimed that his life sentence violated the terms of Diplomatic Note No. 1206. *Second*, Restrepo argued that the Court improperly admitted evidence of uncharged crimes during the trial. The Court of Appeals for the Second Circuit rejected these arguments and affirmed the conviction and sentence.[17] The Second Circuit held that Diplomatic Note No. 1206 did not obligate this Court to sentence Restrepo to a term of years:

> The note expressly contemplated the possibility that a sentencing court might impose a term of life imprisonment and assured Colombia that, if that occurred, the executive authority of the United States would seek to have the sentence commuted to a term of years.[18]

---

[16] *See id.* at 38-39.

[17] *See United States v. Baez*, 349 F.3d 90 (2d Cir. 2003).

[18] *Id.* at 92-93. Although the Second Circuit held that the district court was not bound by the diplomatic note to sentence Restrepo to a term of years, it cautioned:

> In sentencing a defendant extradited to this country in accordance with a diplomatic agreement between the Executive branch and the extraditing nation, a district court delicately must balance its discretionary sentencing decision with the principles of international comity in which the rule of speciality sounds. Courts should accord deferential consideration to the limitations

Restrepo, proceeding *pro se*, filed a section 2255 motion on March 9, 2005. On April 13, 2005, I granted Restrepo's motion for the appointment of counsel. Thereafter, appointed counsel filed a section 2255 motion on Restrepo's behalf on July 28, 2006.

## II. APPLICABLE LAW

### A. Section 2255

Section 2255 allows a convicted person held in federal custody to petition the sentencing court to vacate, set aside, or correct a sentence. A properly filed motion under section 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[19] Accordingly, collateral relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an

> imposed by an extraditing nation in an effort to protect United States citizens in prosecutions abroad. Moreover, in evaluating the exact limitations set by the extraditing nation, courts should not elevate legalistic formalism over substance. To do otherwise would strip comity of its meaning.

*Id.* at 93 (citations omitted).

[19]   *See* 28 U.S.C. § 2255.

-8-

error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"[20]

## B. *Brady* Evidence

Under the *Brady* doctrine, state and federal prosecutors must disclose material evidence favorable to the defendant, whether or not requested.[21] Failure to disclose such evidence is a violation of due process "irrespective of the good faith or bad faith of the prosecution."[22] The *Brady* rule does not require a prosecutor to "deliver his entire file to defense counsel," but only to produce information that is material to the defendant's guilt or punishment.[23] Material evidence includes exculpatory as well as impeaching evidence.[24] "[E]vidence is material and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the

---

[20]    *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[21]    *See United States v. Bagley*, 473 U.S. 667, 675 (1985).

[22]    *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[23]    *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *Bagley*, 473 U.S. at 675.

[24]    *See Bagley*, 473 U.S. at 676.

-9-

defense, the result of the proceeding would have been different.'"[25] The test for "reasonable probability" is not "whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."[26]

## C. Ineffective Assistance of Counsel

The right to effective assistance of counsel applies to those stages of criminal prosecution that are deemed "critical stages."[27] If a defendant's counsel is "either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," the defendant's rights are violated even absent a showing of prejudice.[28]

A critical stage is a stage that holds "significant consequences for the

---

[25]     *Kyles*, 514 U.S. at 433-34 (quoting *Bagley*, 473 U.S. at 682).

[26]     *Id.* at 434.

[27]     *See United States v. Davis*, 239 F.3d 283, 285-86 (2d Cir. 2001) ("[I]t is well settled that a defendant's Sixth Amendment right to counsel attaches 'at all critical stages in the proceedings after the initiation of formal charges.'") (quoting *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998)) (internal quotation marks omitted).

[28]     *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984).

-10-

accused."[29] Thus, a defendant whose attorney is not permitted to provide a summation has been denied counsel at a critical stage,[30] as has a defendant who is not permitted to consult with his attorney during an overnight recess in the midst of trial.[31]

A petitioner seeking to attack his sentence based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[32]

In analyzing a claim that counsel's performance fell short of constitutional standards, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument."[33] Instead, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range

---

[29]    *Bell v. Cone*, 535 U.S. 685, 696 (2002) (citations omitted).

[30]    *See Herring v. New York*, 422 U.S. 853, 865 (1975).

[31]    *Geders v. United States*, 425 U.S. 80, 91 (1976).

[32]    *Strickland v. Washington*, 466 U.S. 668, 688, 693-94 (1984).

[33]    *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

-11-

of reasonable professional assistance . . . ."[34] As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and
> facts relevant to plausible options are virtually unchallengeable;
> and strategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable professional
> judgments support the limitations on investigation.[35]

Moreover, "[i]n assessing the attorney's performance, a reviewing

court must judge his conduct on the basis of the facts of the particular case,

'viewed as of the time of counsel's conduct,' and may not use hindsight to

second-guess his strategy choices."[36] Thus, a petitioner cannot prevail on a claim

of ineffective assistance merely because he disagrees with his counsel's strategy.[37]

A habeas petitioner "may establish constitutionally inadequate

---

[34]    *Id.* (quoting *Strickland*, 466 U.S. at 689).

[35]    *Strickland*, 466 U.S. at 690-91.

[36]    *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting
*Strickland*, 466 U.S. at 690). *Accord Bell*, 535 U.S. at 698 (noting that to
demonstrate ineffective assistance of counsel at trial, "a defendant must overcome
the 'presumption that, under the circumstances, the challenged action might be
considered sound trial strategy'") (quoting *Strickland*, 466 U.S., at 689).

[37]    *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (explaining that an
indigent appellant does not have a constitutional right to compel appointed
counsel to press every nonfrivolous point on appeal, thus recognizing "the
importance of having the appellate advocate examine the record with a view to
selecting the most promising issues for review"); *Mayo*, 13 F.3d at 533 ("[I]t is not
sufficient for the habeas petitioner to show merely that counsel omitted a
nonfrivolous argument, for counsel does not have a duty to advance every
nonfrivolous argument that could be made.").

performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[38] However, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled."[39] Finally, even if an attorney's performance were objectively unreasonable, a petitioner must still prove prejudice. That is, the petitioner must show "'a reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'"[40]

## III.   DISCUSSION

### A.   Alleged *Brady* Violation

Restrepo contends that his sentence must be vacated because the Government failed to turn over evidence showing that his extradition was conditioned on the promise that he would not be subject to life imprisonment without parole or to an equivalent term in years.[41] Restrepo is wrong. The fact that Colombia had made such a demand was not hidden from Restrepo prior to trial, at

---

[38]   *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).

[39]   *Aparicio*, 269 F.3d at 99 (quotation marks and citations omitted).

[40]   *Id.* at 95 (quoting *Strickland*, 466 U.S. at 694).

[41]   *See* Pet. Mem. at 42.

-13-

trial, or at his sentencing.[42] In Diplomatic Note 1206, the United States clearly

stated that Colombia requested, "as a condition for the extradition of Alex

Restrepo, an assurance that Mr. Restrepo will not be subject to life imprisonment in

the United States."[43] This request, and the United States' response in Diplomatic

Note 1206, were extensively litigated during Restrepo's sentencing proceedings

and on appeal. This Court and the Second Circuit have already determined that the

United States did not assure Colombia that Restrepo would not receive a life

sentence, and none of Restrepo's current claims cast any doubt on those findings.

Restrepo is foreclosed by the Second Circuit's decision from rearguing this issue as

"[a] § 2255 motion may not relitigate issues that were raised and considered on

direct appeal."[44]

However, Restrepo argues that Diplomatic Note 1206 does not reflect

the full agreement between Colombia and the United States.[45] As on appeal, the

_____

[42]     *See, e.g.,* 5/7/02 Letter from (former) Assistant United States
Attorney Vernon Broderick to the Court, at 1-2 (stating that the Colombian
Government had "requested an assurance that Restrepo would not be subject to a
life sentence" and also stating that the Government provided defense counsel with
Diplomatic Note No. 1206 both during discovery and then again during the trial).

[43]     10/23/00 Diplomatic Note No. 1206.

[44]     *United States v. Perez,* 129 F3d 255, 260 (2d Cir. 1997) (citing
*Riascos-Prado v. United States,* 66 F.3d 30, 33 (2d Cir. 1995)).

[45]     *See* Pet. Mem. at 48.

-14-

Government agrees that because Restrepo was not extradited pursuant to an extradition treaty between Colombia and the United States, the request for extradition, diplomatic correspondence, the opinion of the Colombian Supreme Court, and resolutions passed by the Colombian executive branch provide the complete terms of the extradition.[46] Restrepo claims that the Government withheld relevant diplomatic documents and that "later disclosed documentation shows that [Restrepo] not being subject to life imprisonment was a pre-condition of extradition."[47]

Restrepo mentions several documents that he claims were improperly withheld. He asserts that United States' Diplomatic Note No. 1060 dated September 25, 2000,[48] in which the United States assured Colombia that "the death penalty will not be sought or imposed," was not provided until August 11, 2006.[49] However, the Note only concerns the death penalty, and does not alter the understanding between the parties regarding a life sentence. Moreover, Diplomatic

---

46    *See* Gov't Mem. at 24 n.16.

47    Pet. Mem. at 48.

48    Ex. 4 to Pet. Reply Mem.

49    Pet. Reply Mem. at 7. However, the Government claims that Diplomatic Note 1060 was available to the Second Circuit on appeal. *See* Gov't Mem. at 30-31.

-15-

Note 1060 was referenced and described in Diplomatic Note 1206 and therefore known to Restrepo ahead of his sentencing. Thus, any failure to disclose Note 1060 fails the materiality test of *Brady*.

Restrepo also states that Colombia's Diplomatic Note OJ.E. 29006 dated October, 11, 2000[50] was not produced by the United States until April 28, 2003.[51] In this Note, Colombia requested that the United States include "[a] formal agreement that [Restrepo] shall not be subjected to a sentence of life imprisonment." This Note was available to the Second Circuit on appeal. Moreover, the fact that Colombia had requested that Restrepo not be subjected to a life sentence had been known to Restrepo before his trial. OJ.E. 29006 is referenced and described in Diplomatic Note 1206, which was the United States' response to OJ.E. 29006. Because the essential content of the Note was already known to the parties, Restrepo cannot satisfy the materiality standard of *Brady*. Likewise, Colombia's Diplomatic Note OJ.E 30263 dated October 23, 2000,[52] which was produced to Restrepo simultaneously with OJ.E. 20006, is not material under *Brady*. In this Note, Colombia forwarded Resolution No. 59 and reiterated

[50]    Ex. 2 to Pet. Mem.

[51]    *See* Pet. Mem. at 11.

[52]    Ex. 4 to Pet. Mem.

-16-

its request in OJ.E 29006. Nothing in OJ.E. 30263 affects the agreement between the United States and Colombia regarding a life sentence.

Restrepo also claims that Diplomatic Note 067 dated January 28, 2000, in which the United States formally requested Restrepo's extradition, was never produced.[53] However, Restrepo's Colombia law expert, Pedro Pablo Camargo, discussed this Note in his sentencing memorandum dated October 4, 2002, which demonstrates that it was available to the defendant before sentencing.[54] Restrepo also asserts that Diplomatic Note No. 1263 dated November 26, 1999[55] was not produced until August 2006.[56] In this Note, the United States requested "the provisional arrest and detention for extradition purposes of Alex Restrepo." Petitioner notes that the United States cited both Colombian and international law in the Note.[57] However, this language is identical to that of Diplomatic Note 067, which was available to Restrepo before sentencing. Because

---

[53]     *See* Pet. Mem. at 5.

[54]     *See* 10/4/02 Dr. Pedro Pablo Camargo, Sentencing Memorandum ("Camargo Sent. Mem.") at 1 (noting that Diplomatic Note 067 invoked Colombian law).

[55]     Ex. 2 to Pet. Reply Mem.

[56]     *See* Pet. Reply Mem. at 5.

[57]     *See id.*

-17-

the relevant language is identical, any failure to produce Diplomatic Note 1263 is
not material under *Brady*. [58]

Restrepo fails to identify any documents or other evidence showing

that the terms of the extradition agreement were any different from what was

known to this Court at sentencing and to the Second Circuit on appeal. Restrepo

does not identify any express or implied statement in any diplomatic

correspondence that either guaranteed that a life sentence would not be imposed or

required this Court to sentence him to a term of years. The documents Restrepo

claims were withheld fall far short of satisfying the materiality requirement

necessary to establish a *Brady* violation. They only confirm what was already

evident in the previous proceedings: Colombia requested "an assurance that Mr.

Restrepo will not be subject to life imprisonment,"[59] and the United States

---

[58]     Petitioner also cites diplomatic correspondence from Colombia to the
United States in 2005 and 2006 regarding Restrepo. *See* Pet. Reply Mem. at 3-5.
Since this correspondence occurred well after Restrepo's trial and sentencing, the
Government has committed no *Brady* violation by not producing these documents.
In fact, it is not clear whether the Government even had these documents in its
possession as Restrepo obtained them directly from Colombia's Consul General in
Chicago. Petitioner asserts that these documents support his interpretation of the
extradition agreement. However, they do not provide any new factual information
about the extradition agreement. As stated previously, the interpretation of the
extradition agreement was thoroughly litigated during the sentencing proceedings
and on appeal and cannot be relitigated here.

[59]     Diplomatic Note 1206.

-18-

responded to that request in Diplomatic Note 1206. Colombia did not request additional guarantees from the United States after receiving Diplomatic Note 1206 and before extraditing Restrepo a few days later.[60] Accordingly, Restrepo has failed to show that he was denied his due process right to a fair trial because the Government failed to turn over discovery relevant to his extradition.

## B. Ineffective Assistance of Counsel

Restrepo claims that he was denied his right to counsel on five different grounds: (1) defense counsel failed to adequately investigate Restrepo's extradition; (2) defense counsel failed to move to suppress Restrepo's statements to United States officials in Bogotá on the ground that Colombian counsel was not present; (3) defense counsel was absent from a pre-trial conference held on September 25, 2001; (4) defense counsel failed to argue to the jury that there was no physical evidence that Restrepo had been present at the Pagani murder; and (5) defense counsel failed to move for an acquittal based on the theory of dual incrimination.

### 1. Failure to Investigate Extradition

Restrepo contends that his trial counsel failed to adequately investigate the extradition, causing him to be sentenced to life imprisonment

---

[60]     *See* Gov't Mem. at 32.

without parole in violation of the agreed upon terms of his extradition.[61] As

discussed above, the Second Circuit has already affirmed this Court's interpretation

of the extradition agreement and no new facts have been alleged in the instant

motion to alter this interpretation. Accordingly, Restrepo was not sentenced in

violation of the extradition agreement, and he therefore cannot show any prejudice

from his attorneys' alleged failure to investigate his extradition.

Moreover, Restrepo's attorneys extensively investigated the

extradition and had access to all relevant facts and documents concerning the

extradition prior to sentencing. I also granted Restrepo's request for the

appointment of a Colombian law expert of his own choosing to assist him at

sentencing and to investigate "how American Law and Colombian law interact

under the extradition treaty between the countries."[62] Colombian Law Expert

Pedro Camargo submitted a sentencing memorandum to the Court and also

presented arguments during the sentencing, discussing how Colombian law,

American law, and international law affected the extradition agreement and the

sentence.[63] Camargo did not limit his arguments to Diplomatic Note 1206. He also

---

[61]    *See* Pet. Mem. at 50.

[62]    5/20/02 Letter from Gregory Smith (defendant's counsel).

[63]    *See* Sent. Tr. at 20-24.

-20-

noted that United States invoked Colombian law in the formal request for extradition in Diplomatic Note 067, arguing that Restrepo therefore should be sentenced according to Colombian law.[64]  Consequently, Restrepo has failed to establish that counsel performed ineffectively with regard to investigating the extradition.

## 2.     Restrepo's Statements to United States Officials in Bogotá

Restrepo asserts that he was denied his Sixth Amendment right to counsel when his trial counsel failed to challenge the admission of his statements to United States officials in Bogotá on the ground that he was not informed of his right to counsel as provided by Colombian law.  He concedes that he was told that he had a right to an attorney,[65] but argues that (1) had he been informed that that right arose from Colombian law as well as American law, there is a reasonable probability that he would have been acquitted of the Pagani murder, presumably because he would not have made the statements; and (2) his trial attorney erred by failing to object to the introduction of the statements he made in Bogotá on this ground.

---

[64]     *See* Camargo Sent. Mem.

[65]     *See* Pet. Mem. at 55 (observing that the officers read Restrepo his rights off of a "*Miranda* card").

-21-

As a threshold matter, there is no evidence that Restrepo would have
acted differently had he known that his right to counsel was provided by
Colombian law as well as American law. The officers properly advised Restrepo
that he had a right to counsel and he knowingly and voluntarily waived that right.
Further, even without Restrepo's statement, in light of the strength of the
government's evidence, there is no indication that the verdict would have been
different. In the absence of a showing of a reasonable probability that the
disclosure would have affected the outcome of the trial, Restrepo's habeas petition
cannot be granted on this ground.[66]

### 3. Pre-Trial Conference Held on September 25, 2001

#### a. Structural Issues

Restrepo argues that his trial counsel's absence from the pre-trial
conference held on September 25, 2001 resulted in a denial of his right to counsel.
Attorney Alex Eisemann, who represented a co-defendant, agreed to "stand in" for

---

[66] There is apparently some question as to whether Restrepo's trial
attorney raised the issue when he moved to suppress the statements on the ground
that Restrepo was not informed of his *Miranda* rights. Defendant concedes that
his trial counsel provided the Court with the relevant Colombian statute as part of
this motion. *See id.* In light of Restrepo's failure to demonstrate a reasonable
possibility of prejudice, I need not reach this issue.

Restrepo's attorney.[67] At the September 25th conference, the parties discussed

discovery and the motion schedule and the Court set a provisional trial date.

Assuming, arguendo, that a scheduling and status conference is "critical," because

Restrepo was represented by Eisemann, there was no actual or constructive denial

of counsel. Therefore, there was no structural violation of Restrepo's Sixth

Amendment rights that would require automatic reversal of either the conviction or

the sentence.

### b.  Inadequate Representation

Restrepo further argues that Eisemann's representation was so

deficient as to rise to the level of a constitutional violation.[68] First, Restrepo argues

that Eisemann failed to correct the government's assertion that all discovery had

been produced, and as a result of this error, Restrepo was prejudiced because he did

not receive documents relating to his extradition in time to make certain pretrial

motions.[69] But Restrepo has not met his burden of demonstrating a reasonable

---

[67]    *See* 9/25/01 Transcript ("9/25 Tr.") at 2.

[68]    *See* Pet. Mem. at 59.

[69]    Restrepo adds that Eisemann "only added to the confusion by
repeatedly and incorrectly telling this Court that Smith had filed motions." *Id.* In
fact, the Court stated that it had received motions and believed that they were on
behalf of Restrepo, at which point Eisemann added that "My client says Mr. Smith
did file motions, and I remember in our meeting he mentioned he was going to or
had filed them." 9/25 Tr. at 4. In fact, Smith did not file the motions in question

probability that the outcome of the trial or sentencing would have been different had Eisemann not failed to correct this assertion. Accordingly, this error does not rise to the level required to grant Restrepo's petition.

Restrepo next contends that Eisemann's agreement to a trial date prejudiced him because his attorney was not prepared to proceed to trial on that date.[70] This argument has no merit. The trial date set at the conference was almost five months in the future.[71] Restrepo has not argued that Smith was not promptly informed of the trial date. If the date had been problematic, Smith had almost half a year to object. In the absence of further evidence, Smith's failure to complain about the trial date conclusively demonstrates that Restrepo was not prejudiced by the decision to set the trial date in the absence of his counsel.

## 4. Lack of Physical Evidence That Restrepo Had Been Present at the Pagani Murder

Restrepo contends that he was denied effective assistance of counsel because his trial counsel failed to elicit from witnesses or argue to the jury that there was no physical evidence that Restrepo had been present at the Pagani

until two weeks later. Regardless, there is no indication that this led to any sort of prejudice, let alone a reasonable possibility of an effect on the outcome.

[70]   *See* Pet. Mem. at 60.

[71]   *See* 9/25 Tr. at 7 (setting provisional trial date of February 19, 2002).

murder.[72] Restrepo further asserts that the jury may have had the false impression that his fingerprints were found at the crime scene.[73] The record indicates that the parties and the Court were concerned that the jury might have formed this impression, and in response to a question sent by the jury during deliberations, the jury was given detailed information on where Restrepo's fingerprint was discovered.[74] Restrepo argues that his trial counsel failed to argue this point specifically, but there is no reason to believe that such argument would have been effective. In the absence of a reasonable probability of prejudice, Restrepo's Sixth Amendment right to counsel was not violated.[75]

### 5. Failure to Move for Acquittal Based on a Theory of Dual Incrimination

[72]    *See* Pet. Mem. at 60.

[73]    *See id.* at 61.

[74]    *See* Trial Transcript ("Trial Tr.") at 2672.

[75]    Again, there is serious question as to whether Restrepo's trial attorney erred by failing to argue this point to the jury. His attorney did argue at summation that the only evidence against his client was testimonial. *See* Trial Tr. at 2512. Not dwelling on the fingerprint may have been a strategic decision – a reasonable attorney could judge the risk of focusing the jury's attention on the fingerprint to outweigh the benefit of planting a seed of doubt as to the fingerprint's probative value. Reasonable strategic decisions by trial counsel cannot rise to the level of constitutional error. "A court 'may not use hindsight to second-guess' counsel's tactical choices." *McKee v. United States,* 167 F.3d 103, 106 (2d Cir. 1999) (quoting *Mayo,* 13 F.3d at 533). Because I find that there has been no showing of prejudice, I need not reach this issue.

-25-

Restrepo argues that he received ineffective assistance because counsel failed to move for acquittal based on the doctrines of dual incrimination and specialty. Specifically, Restrepo contends that there was insufficient evidence to convict him because: (1) the Government did not prove a pattern of activity relating to drug trafficking with regard to Counts One and Two; and (2) no nexus to drug trafficking had been established for Counts Twelve and Thirteen.[76]

"The rule of specialty, which is derived from principles of international comity, 'generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country.'"[77] Under Colombian law, the principle of dual incrimination requires that for an extradition to be granted "the act on which [the] extradition is based must be considered an offense in Colombia, and must be punishable by a term of incarceration of not less than four (4) years."[78]

The Colombian Supreme Court of Justice held that Counts One, Two, Twelve, and Thirteen of the Superseding Indictment satisfied Colombia's dual incrimination requirement. Specifically, it explained that Counts One and Two of

---

[76]    *See* Pet. Mem. at 62.

[77]    *United States v. Cuevas*, 496 F.3d 256, 262 (2d Cir. 2007).

[78]    8/29/00 Colombia Supreme Court of Justice Opinion ("Colombia Opinion") at 27, attached to Appendix to Petitioner's Brief on Appeal, at 139-177.

the Superseding Indictment "have a counterpart in the rules of conduct codified in Item 2, Article 186 of the Penal Code, that is, agreement to commit crime related to drug trafficking."[79] It also concluded that Counts Twelve and Thirteen "correspond in the Colombian legislation to aggravated homicide."[80] There is no evidence to suggest that the Colombian government or courts misunderstood the extradition request or imposed a requirement that the Government prove multiple acts of narcotics trafficking for Counts One and Two. The United States accurately informed Colombia of the elements of each charge for which extradition was granted.[81] The Government also correctly conveyed that the Superseding Indictment only contained one racketeering act that made specific reference to drug activity.[82] Furthermore, there is no evidence to suggest that Colombia required a nexus to drug trafficking be established for Counts Twelve and Thirteen. The Colombia Supreme Court of Justice's determination that Counts Twelve and Thirteen correspond to "aggravated homicide" contradicts such an assertion.

Furthermore, the Government clearly established at trial that the

---

[79]    *Id.* at 33.

[80]    *Id.* at 36.

[81]    *See* 1/28/00 Diplomatic Note 067.

[82]    In its opinion, the Colombia Supreme Court of Justice cited the Superseding Indictment in full. *See* Colombia Opinion at 4-18.

racketeering organization robbed narcotics dealers and then distributed the stolen drugs. Thus, the Government proved that the enterprise as defined in the Superseding Indictment engaged in drug trafficking activity. Restrepo was convicted of the crimes for which he was extradited. Consequently, Restrepo's contention that counsel was ineffective for not moving for acquittal based on the doctrine of dual incrimination is without merit.

## IV. CONCLUSION

For the foregoing reasons, Restrepo's section 2255 motion is denied and his case is dismissed. The remaining question is whether to grant a certificate of appealability. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right."[83] A substantial showing does not require a petitioner to demonstrate that he would prevail on the merits, but merely that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[84] Petitioner has made no such showing in this case. Accordingly, I decline to issue a certificate of

---

[83]    28 U.S.C. § 2253(c)(2).

[84]    *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted)).

appealability. The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 11, 2008

## - **Appearances** -

**For Petitioner:**

Susan M. Damplo, Esq.
923 Saw Mill River Road, #219
Ardsley, New York 10502
(914) 693-2476

Nancy Lee Ennis, Esq.
Quijano & Ennis, P.C.
381 Park Avenue South, Suite 701
New York, New York 10016
(212) 686-0666

**For Respondent:**

Helen Cantwell
Ronnie Abrams
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2193/2270